UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARY LANPHEAR, o/b/o L.L., a minor child,<br><br>      Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>      Defendant. | CASE NO.  C08-5355RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for December 12, 2008 |

  Plaintiff, L.L., a minor, has, through her grandmother and co-guardian, Mary Lanphear, brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Robert J. Bryan's review.

FACTUAL AND PROCEDURAL HISTORY

  Plaintiff currently is 12 years old.[1] Tr. 32. She has no past work experience. Tr. 24. Plaintiff, through her grandfather and co-guardian, James Lanphear, protectively filed an application for SSI

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

benefits on June 10, 2004, alleging disability as of October 2, 2003, due to post traumatic stress disorder and attention deficit hyperactivity disorder. Tr. 21, 24, 32, 62, 65-67. Her application was denied initially and on reconsideration. Tr. 21, 32, 34, 58-60, 62-64. On September 7, 2007, a hearing was held on September 7, 2007, before an administrative law judge ("ALJ"), at which plaintiff, unrepresented by counsel, appeared and testified, as did plaintiff's grandmother. Tr. 347-67.

On November 7, 2007, the ALJ issued a decision determining plaintiff to be not disabled, finding in relevant part as follows:

(1)   at step one of the disability evaluation process for determining eligibility for SSI benefits for a minor child set forth below, plaintiff did not engage in substantial gainful activity at any time relevant to the decision;

(2)   at step two of that process, plaintiff had "severe" impairments consisting of post traumatic stress disorder and rule out attention deficit hyperactivity disorder; and

(3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B, nor were they functionally equivalent in severity to any impairments listed therein.

Tr. 21-30. Plaintiff's request for review was denied by the Appeals Council on April 25, 2008, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 416.1481.

On June 3, 2008, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. (Dkt. #1). The administrative record was filed with the Court on August 21, 2008. (Dkt. #12). Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings for the following reasons:

(a)   the Commissioner and the ALJ violated plaintiff's procedural due process rights by failing to properly advise her of her right to have legal representation;

(b)   the ALJ violated plaintiff's procedural due process rights by failing to fully and fairly develop the record at the hearing; and

(c)   the ALJ erred in failing to properly consider all of the medical evidence in the record supporting a finding that plaintiff's impairments were functionally equivalent in severity to any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part B.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and, for the reasons set forth below, recommends that the ALJ's decision should be reversed, and that this matter should be remanded to the Commissioner for further administrative proceedings. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

REPORT AND RECOMMENDATION
Page - 2

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. Sequential Evaluation Process for Determining a Minor Claimant's Eligibility for SSI Benefits

For a claimant who is under the age of 18, the Commissioner will consider that claimant disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. To be disabled, therefore, the impairment or combination of impairments must be medically determinable, that is they "must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.927(a)(1).

Notwithstanding the presence of a medically determinable impairment, however, if the claimant is engaging in "substantial gainful activity," he or she will not be found disabled. 20 C.F.R. §§ 416.906, 416.924(a). At step one of the sequential evaluation process, therefore, the Commissioner must determine whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the claimant is not engaging in such activity, the Commissioner then moves on to step two of the evaluation process. 20 C.F.R. § 416.924(a).

At step two of that process, the Commissioner must consider whether the claimant has a "severe" impairment. 20 C.F.R. § 416.924(a), (c). An impairment is not severe if it is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). If the impairment is severe, then, at step three, the Commissioner must determine whether it

"meets, medically equals, or functionally equals" any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R. § 416.924(a), (d). If the claimant has such an impairment, and it "meets the duration requirement" noted above, disability will be found. 20 C.F.R. § 416.924(a).

In determining whether a minor claimant is disabled, the Commissioner will consider "all of the relevant evidence" in the record, including information from medical and other sources, such as therapists, parents, teachers and other people the claimant knows. 20 C.F.R. § 416.924a(a). The Commissioner thus "will not consider any single piece of evidence in isolation" or "rely on test scores alone." 20 C.F.R. § 416.924a(a)(1)(ii). In evaluating the ability to function, the Commissioner looks at whether the claimant can do the activities other children the claimant's age can do, how well the claimant does those activities, and how much help is needed from family, teachers or others. 20 C.F.R. § 416.924a(b)(2)(i).

II. <u>Neither the Commissioner Nor the ALJ Failed to Properly Advise Plaintiff of her Right to Have Legal Representation in Violation of Her Due Process Rights</u>

Plaintiff argues she was not properly advised of her right to have an attorney represent her at the hearing. The undersigned disagrees. The record in this case, as noted above, reflects that both plaintiff's grandmother and her grandfather were her co-guardians. On November 8, 2004, the initial written notice of the denial of plaintiff's application for SSI benefits was issued to her in the care of her grandfather. Tr. 62. That notice contains the following language:

> IF YOU WANT HELP WITH YOUR APPEAL
>
> You can have a lawyer, friend, or someone else help you. <u>There are groups that can help you find a lawyer or give you free legal services if you qualify.</u> There are also lawyers who do not charge unless you win your appeal. Your local Social Security [Administration ("SSA")] office has a list of these groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it.

Tr. 64 (emphasis in original). The notice also provides information on contacting the local SSA office with any questions plaintiff or her grandfather might have. Id.

The written notice of the denial of plaintiff's request for reconsideration of her application was sent to plaintiff in care of her grandfather on February 9, 2005. Tr. 58. That notice contained the same language as noted above concerning obtaining representation, legal or otherwise, should help with the administrative hearing be desired. Tr. 60. A June 6, 2005 letter from the SSA's Office of Hearings and

Appeals Chief Administrative Law Judge addressed to plaintiff in care of her grandfather further states in relevant part as follows:

**Your Right to Representation**

> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. If you decide to have a representative, you should find one immediately so that he or she can start preparing your case.
>
> Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive any fee unless we approve it.

Tr. 55 (emphasis in original). That letter further states a leaflet entitled "Social Security and Your Right to Representation" is enclosed. Tr. 56.

On April 7, 2007, the SSA's Office of Disability Adjudication and Review sent a letter to plaintiff in care of her grandfather, noting she had requested an administrative hearing before an ALJ, stating further in relevant part:

> You have the right to be represented by an attorney or other representative of your choice. If you wish to be represented, you are strongly urged to obtain representation as soon as possible. Continuances and postponements of hearings are not routinely granted simply to allow claimants time to obtain representation. Therefore, again, if you wish to be represented, you should obtain a representative as soon as possible. Please notify this office promptly if you obtain representation.

Tr. 54. Once more, contact information was provided concerning any questions plaintiff or her grandfather might have regarding the matter. Id. On August 3, 2007, a "notice of hearing" was sent to plaintiff in care of her grandfather, informing her of the date, time and location of the hearing, and containing the same language as was included in the April 7, 2007 letter – albeit this time set out in bold print – concerning the right to be represented, either by an attorney or other person, at the hearing. Tr. 48.

Plaintiff, through her grandfather, therefore was informed of her right to legal representation, and how to go about obtaining such representation, in writing at least five times, three of which specifically were in regard to her hearing. Plaintiff does not argue her grandfather was not her legal co-guardian or could not act on her behalf. Nor does plaintiff argue her grandfather was not sent and did not receive any of the above notices. As such, the undersigned finds plaintiff was given more than sufficient notice of her right to have legal representation, not only at the hearing, but during the initial and reconsideration portions of the administrative appeal process as well.

Plaintiff argues, though, that even more was required by the Commissioner's Hearing, Appeals and Litigation Law Manual ("HALLEX"). The HALLEX, as plaintiff points out, does state that if a claimant is not represented, "a list of organizations which may provide representation" is to be enclosed with the letter acknowledging receipt of a valid request for a hearing. HALLEX I-2-0-20.[2] Plaintiff claims she did not get any such list with her acknowledgment letter. The above June 6, 2005 letter from the Chief Administrative Law Judge, however, also expressly states that: "We are also enclosing a list of groups that can help you find a representative." Tr. 56. Plaintiff has not alleged or shown she did not receive this letter. Indeed, the fact that the letter was included in the record without objection indicates plaintiff, or at the very least her grandfather, did receive it. Plaintiff also has not provided any evidence the "list of groups" referenced in that letter was not enclosed as well. Further, even if the list was not enclosed, no attempt appears to have been made, either by plaintiff's grandfather or her grandmother, to ask for a copy of it on discovery of its absence. Plaintiff's claim here, therefore, is without merit.

The HALLEX further provides in relevant part that at the hearing:

> . . . [I]f the claimant is unrepresented, the ALJ must ensure that the claimant is capable of making an informed choice about representation. For example, the ALJ should ask an unrepresented claimant the following questions on the record:
>
> • Did you receive the hearing acknowledgment letter and its enclosure(s)? (If not, the ALJ will provide the claimant with a copy and the opportunity to read the letter.) The ALJ will enter into the record the acknowledgment letter and enclosure(s) sent to the unrepresented claimant.
>
> • Do you understand the information contained in that letter concerning representation? (If not, the ALJ will explain the claimant's options regarding representation, as outlined in the acknowledgment letter. Specifically, the ALJ will explain the availability of both free legal services and contingency representation as well as access to organizations that assist individuals in obtaining representation. . . . )
>
> Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will either secure on the record the claimant's decision concerning representation, or obtain from the claimant a written waiver of the claimant's right to representation, which will be marked as an exhibit.

HALLEX I-2-6-52.[3] Plaintiff argues the ALJ erred in this case by failing to acknowledge that she and her grandmother were unrepresented by an attorney, and thus proceeding *pro se*, and therefore by not ensuring

---

[2] See http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-0-20.html.

[3] See http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-6-52.html.

REPORT AND RECOMMENDATION
Page - 6

1 they knew of their right to, and were able to make an informed choice about, having legal representation at
2 the hearing.

3     It first should be noted that neither the HALLEX nor the Commissioner's regulations concerning
4 representation requires that if a claimant wishes to be represented at a hearing, such representation must be
5 in the form of an attorney. <u>See</u> 20 C.F.R. § 416.1505; HALLEX I-1-1-1[4], I-1-1-2[5]. The Social Security
6 Act itself also does require that a claimant have legal representation. <u>See</u> 42 U.S.C. § 406(a). The
7 HALLEX, furthermore, unlike either the Social Security Act and the Code of Federal Regulations, "is
8 strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff
9 members," and "[a]s such, it does not prescribe substantive rules and therefore does not carry the force and
10 effect of law." <u>Moore v. Apfel</u>, 216 F.3d 864, 868-69 (9th Cir. 2000). Accordingly, the HALLEX and the
11 "guidance" it provides to an ALJ is not binding on this Court.

12     As noted above, plaintiff argues her grandmother was in essence in the same position as she is, that
13 is, she too was a party acting *pro se* with respect to the administrative appeal process, including during the
14 hearing held before the ALJ. The evidence in the record concerning the status of plaintiff's grandmother is
15 mixed. In the written request for reconsideration of the SSA's initial denial of plaintiff's application, both
16 plaintiff's grandmother and grandfather are listed as her non-attorney representative. Tr. 61. In the written
17 request for a hearing filed on plaintiff's behalf, however, neither her grandmother nor her grandfather were
18 listed as her representative, and the SSA itself indicated plaintiff was not represented. Tr. 57. Nor does the
19 record contain an authorization of representative form as appears to be required by both the HALLEX and
20 the Commissioner's regulations. <u>See</u> 20 C.F.R. § 416.1507; HALLEX I-1-1-10[6], I-1-1-11[7].

21     It also is not clear whether the ALJ himself believed plaintiff to be represented. For example,
22 while plaintiff's grandmother answered in the affirmative when the ALJ asked her whether she "in
23 essence" was representing plaintiff (Tr. 350), in his decision the ALJ found plaintiff "chose to appear and
24 testify without the assistance of an attorney or other representative" (Tr. 21). Given this finding by the

---

[4]<u>See</u> http://www.socialsecurity.gov/OP_Home/hallex/I-01/I-1-1-1.html.

[5]<u>See</u> http://www.socialsecurity.gov/OP_Home/hallex/I-01/I-1-1-2.html.

[6]<u>See</u> http://www.socialsecurity.gov/OP_Home/hallex/I-01/I-1-1-10.html.

[7]<u>See</u> http://www.socialsecurity.gov/OP_Home/hallex/I-01/I-1-1-11.html.

ALJ, and the fact that, as noted above, the SSA did not believe plaintiff was represented, at least with respect to her request for a hearing, it seems at least the Commissioner was not treating her as being represented, regardless of what plaintiff's grandmother may have stated at the hearing.

Regardless, the only violation here appears to be that of the guideline set forth in the HALLEX that the ALJ ensure an unrepresented claimant is capable of making an informed decision about representation, and secure the claimant's decision with respect thereto. Also as noted above, though, the HALLEX, as an internal policy guideline, is not binding on this Court. The undersigned further agrees with the ALJ that plaintiff was properly informed of her right to representation (Tr. 21), by an attorney or other person, in light of the several express notices she received with respect thereto through her grandfather as discussed above. This was all that was required to satisfy due process here. See Udd v. Massanari, 245 F.3d 1096, 1099 (9th Cir. 2001) (due process requires that claimant receive meaningful notice and opportunity to be heard before claim for disability benefits may be denied) (citing Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). That plaintiff apparently chose not to exercise that right is not the fault of the Commissioner or the ALJ. Thus, the undersigned finds no violation of plaintiff's due process rights occurred here.

III. The ALJ Did Not Err in His Duty to Fully and Fairly Develop the Record

Plaintiff alleges the ALJ's conduct at the hearing denied her due process and prevented the record from being fully and fairly developed in this matter. Specifically, she asserts at the hearing the ALJ:

(1) erred by not admitting the statements from plaintiff's teachers and other school personnel relating to her functioning abilities that her grandmother brought to the hearing;

(2) erred by precluding plaintiff's grandfather from being present and testifying at the hearing;

(3) erred by failing to explain to plaintiff's grandmother the standard needed to be met to establish disability;

(4) erred by interrupting plaintiff's grandmother numerous times, intimidating her[8], and precluding her from testifying fully and favorably;

(5) erred by focusing his questions almost exclusively on plaintiff's ability to stay

---

[8]Plaintiff attached to her reply brief a declaration in which plaintiff's grandmother alleged, among other things, that she felt intimidated by the ALJ. (Dkt. #17-2). In response, defendant filed a sur-reply arguing the declaration should not be considered by the Court and should be stricken from the record. (Dkt. #18). Plaintiff, subsequently, filed a response to defendant's sur-reply, joining in defendant's request that the declaration be stricken. (Dkt. #19). Accordingly, the undersigned agrees that the declaration of plaintiff's grandmother (Dkt. #17-2) should be stricken from the record, and neither it, nor any arguments plaintiff has put forth based on the contents thereof, shall be considered here.

REPORT AND RECOMMENDATION
Page - 8

    on task; and

  (6) erred in discussing plaintiff's sister at the hearing, and why he was going to award her sister SSI benefits, but not award plaintiff such benefits, rather than individualizing his consideration of plaintiff's right thereto.

(Dkt. #13, pp. 16-17). For the reasons set forth below, though, the undersigned finds each of these claims to be without merit.

  First, the record contains no affirmative evidence that either plaintiff or her grandmother were prevented from presenting additional evidence – or that plaintiff's grandfather was kept from being present and testifying – at the hearing by the ALJ. The only support for these allegations in the record comes from a statement plaintiff's grandmother and grandfather submitted to the Appeals Council, in which they claim the ALJ "did not want to look at or consider" four letters from plaintiff's teachers and one from her school psychologist which were attached to that statement. Tr. 334-35, 340-43, 346. Apparently, however, the Appeals Council found this allegation was not entirely credible, and the attached letters were not sufficient to overturn the ALJ's decision, as it did not grant plaintiff's request for review. Tr. 4-5.

  The undersigned also finds the statement of plaintiff's grandmother and grandfather unpersuasive. Nothing in the hearing transcript indicates plaintiff or her grandmother presented any letters to the ALJ or that the ALJ indicated any unwillingness to accept that evidence or refused to allow plaintiff's grandfather to be present and testify at the hearing. Indeed, as pointed out by defendant in his response brief, plaintiff cited to no specific evidence of this in the record. (Dkt. #16, pp. 11-12). Further, the hearing transcript, clearly shows that ALJ expressly asking plaintiff's grandmother at the beginning of the hearing whether she had any objections to proceeding with the hearing, in response to which plaintiff's grandmother stated that she had none. Tr. 349. While it may be that plaintiff's grandmother did not have actual legal or other representation for herself or plaintiff at the hearing, there is nothing at all in the record to indicate she was incapable of making her concerns or needs known to the ALJ at any time during the hearing, including her desire to have the above-noted letters admitted into the record or to have plaintiff's grandfather be present at the hearing to provide testimony.

  The undersigned also disagrees that the ALJ erred in not explaining to plaintiff's grandmother the standard needed to be met to establish disability. Plaintiff cites no legal authority that requires the ALJ to do so, even in those situations where a claimant is unrepresented by an attorney or other qualified person,

nor has the undersigned found any. Given, as discussed above, that written notice of her right to legal or other representation was amply provided in this matter, to the extent such lack of representation at the hearing may have contributed to the ignorance of plaintiff's grandmother concerning the requirements for establishing disability, that deficiency is not the fault of the Commissioner or the ALJ.

The undersigned further finds wholly unpersuasive plaintiff's allegation that the ALJ interrupted plaintiff's grandmother numerous times during the hearing, intimidated her, or precluding her from being able to testify fully and favorably on behalf of plaintiff. It does appear from the hearing transcript that the ALJ and plaintiff's grandmother at times talked over each other, but the undersigned finds no affirmative evidence that the ALJ intentionally interrupted her, or did so for the purpose of intimidating or precluding her from testifying. Such accusations by plaintiff, furthermore, should be seen in light of the presumption that an ALJ is deemed to be unbiased. Schweiker v. McClure, 456 U.S. 188, 195 (1982). There simply is no indication that the ALJ behaved improperly at the hearing or that he did not attempt to properly develop the record as he saw fit given the evidence in this case.

Plaintiff's last two allegations of impropriety concern the direction of the inquiry the ALJ appeared to take at the hearing. First, plaintiff asserts the ALJ erred by focusing his questions almost exclusively on plaintiff's ability to stay on task. While the ALJ did appear to so focus his inquiry, the undersigned finds the ALJ was not necessarily remiss in doing so. This is because the majority of the evidence in the record that was before the ALJ indicates that area was the one in which plaintiff had the most difficulty – the only other potentially problematic area being in social functioning, although the evidence regarding difficulties in even that area was mixed at best. See, e.g., Tr. 146-56, 158-59, 161-74, 140-45, 186, 211-32, 279, 284, 286-90, 292, 294-95, 299-302 325-26, 306-10, 313-14, 316, 323, 325-26, 328, 330, 336-39.

Plaintiff also claims the ALJ erred in discussing her sister at the hearing, and why he was going to award her sister, but not her, SSI benefits, rather than individualizing his consideration of plaintiff's right thereto. But the undersigned agrees with defendant that the ALJ merely discussed plaintiff's sister for the primary purpose of explaining to plaintiff's grandmother why plaintiff's sister was being awarded benefits and plaintiff was not, even though each of their alleged difficulties in functioning stemmed from the same circumstances surrounding their upbringing. See Tr. 360-67. Indeed, the ALJ clearly and expressly pointed out the specific reasons why he was finding plaintiff not disabled. See id. Accordingly, while the

ALJ did compare and contrast plaintiff with her sister, it was only to show why the two children were being treated differently for purposes of determining eligibility for SSI benefits.

IV. The ALJ Erred in Failing to Properly Consider the Evidence in the Record Supporting a Finding of Functional Equivalency

At step three of the sequential evaluation process, the ALJ is required to evaluate the claimant's impairment or impairments to see if they meet, medically equal, or are functionally equivalent to any of those listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R §§ 416.924(a). The Listings consist of two parts: "Part A," which "contains medical criteria that apply to adult persons age 18 and over," and "Part B," which "contains additional medical criteria that apply only to the evaluation of impairments of persons under age 18." 20 C.F.R. § 416.925(b).

To determine whether a minor claimant has an impairment or impairments that meet any of those contained in the Listings, therefore, Part B is used first. Id. If the medical criteria in Part B do not apply, then the medical criteria in Part A are used. Id. With respect to Part B, "'listing-level severity' generally means . . . 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." Id. Six such "domains" are considered in determining listing-level severity, which are as follows: "(i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for" oneself; "and (vi) [h]ealth and physical well-being." 20 C.F.R. § 416.926a(b)(1).

A claimant's impairment or impairments are deemed "medically equivalent" to an impairment in the Listings, "if the medical findings are at least equal in severity and duration" to the listed impairment. 20 C.F.R. § 416.926(a). In making this determination, the Commissioner compares "the symptoms, signs, and laboratory findings" about the claimant's impairment or impairments with "the corresponding medical criteria" for the listed impairment or impairments. Id. If the claimant's impairment or impairments are not described in the Listings, the Commissioner compares the medical evidence in the record with the criteria "for closely analogous listed impairments" to see if that evidence is "at least of equal medical significance to" the listed criteria. 20 C.F.R. § 416.926(a)(2). Medical equivalence, however, must be based only on the medical evidence in the record, which must "be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.926(b).

If a claimant's impairment or impairments do not meet or medically equal any of those contained in

the Listings, the Commissioner then determines whether his or her impairment or impairments functionally equal the Listings. 20 C.F.R. § 416.926a(a). To functionally equal the Listings, the claimant's impairment or impairments "must be of listing-level severity," i.e., they must result either in marked limitations in two domains or an extreme limitation in one domain. Id. In considering whether the claimant's impairment or impairments are functionally equivalent to the Listings, the Commissioner assesses what the claimant is unable to do, has difficulty doing, needs help doing, or is restricted from doing. Id. The Commissioner also "will assess the interactive and cumulative effects" of all of the claimant's impairments. Id.

The Commissioner will find a "marked" limitation in a domain if the claimant's impairment or impairments interfere "seriously" with the claimant's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation also means "a limitation that is 'more than moderate' but 'less than extreme.'" Id. Further, marked limitation will be found when the claimant has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning" in the particular domain, and the claimant's "day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(d)(2)(iii).

The Commissioner will find an "extreme" limitation in a domain if the claimant's impairment or impairments interfere "very seriously" with the claimant's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation also is one that is "more than marked." Id. As with a marked limitation, an extreme limitation additionally will be found if the claimant has "a valid score that is three standard deviations or more below the mean on a standardized test designed to measure ability or functioning" in the particular domain, and the claimant's "day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii).

In determining whether a claimant has a marked or extreme limitation, the Commissioner "will not rely on any test score alone." 20 C.F.R. § 416.926(e)(4)(i). That is, "[n]o single piece of information taken in isolation" will establish that the claimant has a marked or extreme limitation in a domain. Id. Instead, the Commissioner will consider the claimant's "test scores together with" other information concerning the claimant, such as classroom performance and the observation of others. 20 C.F.R. § 416.926(e)(4)(ii). The Commissioner thus may find there is no marked or extreme limitation, even if the claimant's test scores are

at the requisite level, if other information in the record shows that the claimant's "functioning in day-to-day activities is not seriously or very seriously limited." 20 C.F.R. § 416.926(e)(4)(ii)(B).

Plaintiff argues the ALJ erred in limiting his consideration of the medical and other evidence in the record to only that provided by two state agency non-examining consulting psychologists who reviewed the record, and failing to discuss any of the other evidence contained therein. The undersigned agrees. In his decision, the ALJ found plaintiff had no limitation in the following domains of functioning: acquiring and using information; interacting and relating with others; moving about and manipulating objects; caring for herself; and health and physical well-being. Tr. 25-29. He also found plaintiff to have less than a marked limitation in the domain of attending and completing tasks. Tr. 27. In support of these findings, the ALJ stated in relevant part as follows:

> The domain assessments . . . reflect the analysis by the state agency . . . There is no evidence to contradict the state agency evaluation. [Tr. 140-45] The child claimant testified that she is able to independently complete her chores, including her school work assignments. Her grandmother concurred. I will adopt the state agency's evaluation of the claimant [sic] limitations from her impairments. . . .

Tr. 25.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Defendant argues the ALJ did evaluate the medical and other evidence contained in the record, including the hearing testimony. It is true that the ALJ did reference the testimony of plaintiff and that of her grandmother in his decision, but in a fairly perfunctory manner. In addition, the ALJ did not compare that testimony with the reports of plaintiff and her grandmother, as well as others, contained elsewhere in the record. At least some of those reports indicate potential greater difficulties in the areas of social functioning and task completion than the testimony at the hearing reveals. See, e.g., Tr. 146, 154, 164, 211, 214, 224-27, 279, 288, 290, 294-95, 300, 302, 306, 308-10, 314, 316, 323, 336. The ALJ, furthermore, did not provide any discussion of the other objective medical evidence in the record.

Although it may be, as defendant argues, that this other objective medical evidence is consistent with the findings of the state agency non-examining consulting psychologists, the Court is unable to determine what weight the ALJ gave it, or, indeed, whether even considered it, as he provided no

discussion thereof in his decision. That is, as plaintiff argues, without that discussion and analysis, the Court is left to guess at the ALJ's decision-making process. In addition, it appears that not all of the other objective medical evidence in the record is entirely consistent with the state agency psychologists' findings. For example, as pointed out by plaintiff, she was assessed with a global assessment of functioning ("GAF") score of 40 and 45 by two different psychologists.[9] Tr. 172, 232.

Defendant argues the two state agency psychologists did not find those GAF scores to be worthy of mention. But the issue is not whether they properly considered the other medical evidence in the record, but whether the ALJ did so. By not discussing that other evidence, there is no way to determine whether the ALJ considered and then properly rejected the above very low GAF scores. Further, the mere fact that the two state agency psychologists <u>may</u> have considered and then rejected those scores, does not mean that the ALJ did, especially given that, as defendant points out, those psychologists made no mention thereof in their report. <u>See</u> Tr. 142. Defendant also argues that GAF scores are not controlling and are not applicable to minor children. Presumably, however, the licensed psychologists who gave those GAF scores deemed them to be of value in assessing plaintiff's functioning. In addition, although perhaps not controlling, a GAF score is still "relevant evidence" of a claimant's ability to function mentally. <u>England v. Astrue</u>, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).

V. <u>This Matter Should Be Remanded for Futher Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative

---

[9] A GAF score of 41 to 50 indicates "'[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); <u>see also</u> Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning."). In addition, "[a] GAF score of 31-40 is extremely low, and 'indicates . . . major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'" Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (quoting DSM-IV-TR at 32).

proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because, as discussed above, issues still remain in regard to whether the evidence in the record supports the ALJ's determination that plaintiff's impairments do not functionally equal any of those contained in the Listings, this matter should be remanded to the Commissioner for further administrative proceedings. Specifically, on remand the Commissioner should re-consider all of the evidence in the record, medical and otherwise, to determine whether a finding of functional equivalency is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 12, 2008**, as noted in the caption.

DATED this 17th day of November, 2008.

Karen L. Strombom
United States Magistrate Judge